All rise. Here ye, here ye, this Honorable Appellate Court of the 2nd Judicial District is now back in session. The Honorable George Bridges presiding. May be seated. Your Honor, the provocation we've got is 2-21-0238, the people of the state of Illinois v. Appellate v. Sebastian Zarbock, defendant of Kellogg's. Arguing on behalf of Mr. Richard A. Lott, arguing on behalf of Appellate v. Mr. Ivan O. Taylor. Good morning. Are both parties ready to proceed? Yes, Your Honor. Body, you may proceed. Good morning. My name is Elizabeth Body from DePaul's Criminal Appeals Clinic, and I represent Sebastian Zarbock. Of the three arguments raised on appeal, I would like to focus today on the first two, starting with Argument 1. Sebastian stands convicted of an uncharged and undefended crime that is not a lesser included offense of the crime with which he was charged. Sebastian was charged with one offense. He was charged by accountability with the drug-induced homicide of his very close friend, Shannon Finn. The principal named in the indictment is Mello, the dealer. The State theorized that Sebastian was accountable for Mello's delivery and that the drugs Mello delivered to Shannon caused her death. At the end of the case, the judge ultimately acquitted Sebastian of the crime. Ms. Body, let me ask you this, because the indictment provides that Shannon Finn ingested heroin. Doesn't that fact put the defendant on notice that Shannon, in fact, possessed heroin? And in our case, we're talking about an accountability. But doesn't that put him on notice for that? It doesn't. No defendant charged with aiding and abetting a homicide would reasonably anticipate being convicted of aiding and abetting the dead victim's crime of that homicide. Don't we have to look to the – there's three various methods the courts have recognized whether the indictment contains the elements of the offenses. So which method would you think should be utilized in this case? Well, we use the charging instrument approach, but I don't think we even get there, because the problem here is that the principal named in the indictment is not the same as the principal offender of the charge of the convicted offense. The lesser-included offense doctrine has never applied where the State gets to switch principles. The State switched principles at the end of the case. He was charged with aiding and abetting Mello's homicide, but he was convicted of aiding and abetting Shannon's crime. Bonnie, the first suggestion that the defendant was guilty perhaps of possession was Mr. Carroll's argument at the motion for directive finding. Correct? No, it wasn't. Let me ask you this. The judge is hearing the argument on the motion for directive finding, and Mr. Carroll says, as a result of the facts that were pledged here, I believe that at most they have established joint possession, citing cases that the Court had directed the parties to look at. And this was before they had written the final arguments. This is Mr. Carroll suggesting that perhaps my client is guilty of joint possession. And then the State responds, and Mr. Mello, the assistant State's attorney, says, Judge, the motion should be denied. I agree with Mr. Carroll, I guess, that the defendant is guilty of possession, but I also put forth that the defendant is also guilty of drug-induced homicide. You mean Mr. Carroll invited the Court to look at joint possession? That's not what he was saying. He was saying he wasn't saying he was he possessed Shannon's drugs. He was saying he was a joint user. The first notion that the Court should be considering possession was what Mr. Carroll said. Perhaps he's – perhaps they have proved at most joint possession. Right. He's saying joint possession. Drug-induced homicide doesn't apply to joint users. He wasn't saying you can convict him of possession under the legislation. Right. And I think he makes it clear in his final argument. Right. I mean, there are arguments that he is objecting to any finding because it hasn't been charged. But, I mean, the record basically clearly shows that he knows what heroin the State was talking about. Are you talking in terms of the heroin found in her apartment? Yes. Right. But he was just making the point that you can't convict him of possessing the drugs ingested in the car or the drugs that are in her system. The only drugs that theoretically he could have possessed were the drugs in her apartment. And he argued that he couldn't have possessed those, that that's not a lesser-included offense, that Shannon's possession isn't a lesser-included offense. And I think his argument, he wasn't talking about convicting him of Shannon's possession as a lesser-included offense. He was saying drug-induced homicide doesn't apply to joint users. The first time the whole idea of lesser-included offense came up was when the judge ordered the parties to draft written closing arguments because this was a novel issue. No one had been charged under accountability with drug-induced homicide. And the judge said, this is his only charge, right? He wasn't charged with any other crime. He wasn't charged with possession. And the State said, oh, well, actually, you know, you can convict him of possession. And then the judge Well, the State is basically responding to the defendant's argument. He was responding to the judge's comment, not the defendant. I think that's, with all due respect, I think that's mischaracterizing the defense's motion for direct defining. I think he was I read verbatim into the record what was said. And I get what you're saying. It's not unusual for a defense attorney to say, judge, they didn't charge this. Maybe he did commit a robbery, but they didn't charge it that way. Or a sexual assault. They didn't charge it that way. And you cannot find my client guilty of the lesser-included because it's not in the broad outline of the indictment. Here, the broad outline of the indictment says that Shannon ingested the heroin that the defendant was responsible for possessing. Right. That's the argument that they make. That the State is making. Right. Right. But the problem is the charged principle is mellow. There's not a single case in the State of Illinois where the State gets to switch principles at the end of the case and say, guess what? Instead of convicting him of aiding and abetting mellow, let's convict him of aiding and abetting someone else. That doesn't happen. That's not how the lesser-included defense doctrine works. He's charged as delivering or one who's legally? Right. He was charged by accountability. Right. Because he didn't deliver. Right. And so the State's theory was he was accountable for mellow's delivery. There's not a case in the State of Illinois where a judge has found a crime convicted committed by someone else is a lesser-included offense of someone else's crime. It doesn't happen that way. Don't we also have to consider whether or not the defendant would reasonably anticipate that this would happen? So I think you're How would he reasonably anticipate the switch at the end? He wouldn't because no defendant charged with aiding and abetting a homicide would reasonably anticipate being convicted of aiding and abetting the victim's crime. Sebastian didn't in this case. His defense was, one, he didn't have a common, a mutual agreement with mellow. Two, drug abuse homicide statute doesn't apply to joint users like him. And three, that the drugs Shannon bought from mellow weren't the drugs that caused her death. And as to the latter, the defense theorized that Shannon, who was depressed, she lost custody of her kids, she had multiple sources of drugs, did drugs on a daily basis, committed suicide. As evidenced by the fentanyl in her system, she had empty prescription bottles in her apartment that at one point obviously contained drugs. So the defense theory was based on causation. And had defense counsel known he was defending Shannon's possession, he could have minimized Sebastian's role in the drug buy, or he could have seen the value of moving a suppressive statement. But because he thought he was defending a homicide charge, what happened here is that the possession, Shannon's possession charge, went virtually undefended. And that offends basic concepts of notice and due process. Is there any evidence that the defendant here ever exercised any dominion or control over the drugs that killed Shannon? No. The judge found that he did not possess them. The runner gave them directly to Shannon. He didn't possess them. The judge found he didn't know when the deal would occur, how it would occur, where it would occur. The judge found Sebastian was a mere joint user who went along for the ride in hopes of getting drugs for his own personal consumption. And that, in fact, did happen. After the purchase, the runner brings the drugs back and they split it up? Shannon did give Sebastian some drugs. And they're all dropped off after that, so. And they ingested it in the car. Let me ask this. Under the abstract element approach to determine whether this offense is a lesser included offense, unlawful possession would be a lesser included offense in this case. Is that correct? Unlawful possession, Mellow's unlawful possession would be a lesser included offense of Mellow's drug-induced homicide. That's the crime that was charged. Shannon's possession is not a lesser included offense of Mellow's crime. But isn't the abstract element approach understood to be more stringent, an approach to the using the charge and instrument approach? Well, I think the charge and instrument approach applies here in this context. I know that's your position. But I'm saying wouldn't, if we looked at this under the abstract element, wouldn't this be a possession case? No. You still, you can't change users. You can't change personal offenders. So your argument is still based upon the fact that the principle was Mellow, and then now the State shifted the principle to Finn. Yes. My argument is you cannot, the State cannot charge a defendant with aiding and abetting person X and then convict him under the lesser included offense doctrine of the uncharged offense of aiding and abetting person Y. That's not how the doctrine works. It never has worked that way. Mellow or Mellow is not identified in the indictment. He is. Well, I think. His name? I can't remember who his name is. His name? I think the dealer then is. The names, the only persons identified in the indictment are defendant and Shannon or a person, either the defendant or one for whose conduct he is legally accountable. The State can charge any defendant as long as the evidence is there and convict the defendant even though it turns out he was not the principal, he was accountable. Accountability is a theory that can be changed during the course of the trial depending on how the evidence develops. You can't change the principle through the course of the trial. A defendant cannot be accountable. Do you have a case that says that you can't? Every case that applies the lesser included offense doctrine has the same principal offender in the charging instrument and the same principal offender of the convicted offense. This is the first time the State has ever been allowed to switch principals. The defendant is named as both a principal or a person for whom he is legally responsible. That's the language of the indictment. But the State admitted he didn't deliver the drugs. The judge found he didn't deliver the drugs. The whole theory was he was accountable for Mello's delivery. There were pretty extensive, apparently, plea negotiations in this case. The case was continued approximately, I think, nine times for a potential offer. And on the final time, there was a conference with the judge. There was no 402 admonishments given to the defendant. But the defense counsel says, I shared with my client what took place at the conference, and he's now ready to waive jury. So we can all presume that the discussion was about pleading to a lesser included, but there was never any agreement. So should we even consider that? That's not relevant. I don't know how that's relevant. What's relevant is the way, maybe perhaps not this disposition particularly, but shouldn't the defendant have been given admonishments before they had that conference? I have to go back and look at the record, but typically, yes. I think what's relevant here is that a defendant can't be accountable for someone unless that person is named in the indictment. The State can't switch principles at the end of the case. What the judge's ruling misapprehends, misapplies, misconstrues the lesser included offense section. Your argument is that the broad outline of the indictment did not place the defendant sufficiently on notice that the State could argue or would argue this theory, right? It couldn't have when the indictment prescribed Mello's conduct and his crime, not Shannon's. The lesser included offense doctrine doesn't apply unless the principle named in the indictment is the same as the principle of the so-called lesser offense. And also the evidence here, further highlighting the judge's error, is that the evidence doesn't rationally support the conviction of Shannon's possession. The judge found or acquitted Sebastian of drug-induced homicide, finding that he wasn't accountable for Mello's delivery. The judge said, as I said earlier, he didn't know when the deal would occur. He didn't know how it would occur. But you're talking about the facts of the case now, and we shouldn't be looking at the evidence or the facts. We should just look at the broad outline of the indictment. So can you tell us? Well, that's a second step. So first we look at the broad outline. The broad outline. We have to get past that first step to get to the evidence. Correct. So are you conceding that the broad outline of the indictment put the defendant on notice? No, absolutely not. As I said before, no defendant charged with aiding and abetting a homicide would reasonably anticipate being convicted of aiding and abetting the victim of that homicide. And Sebastian didn't. His defense theory was not to minimize his role in the buy. His defense theory was to disprove causation. And I submit that we don't even get to that charging instrument approach because the principle of the lesser, the so-called lesser offense is not the same as the principle of the charge offense. The charging instrument did not put him on notice. An defendant is entitled to notice of the charges against him, so he can prepare a defense. And his defense, his this crime went basically undefended. But now we can get to the evidence. This further highlights the judge's error because the evidence does not rationally support a conviction for Shannon's possession. He was acquitted of aiding and abetting Mello's delivery, meaning he didn't have anything to do with the transfer of possession from Mello. So if he didn't aid that transfer of possession, then he doesn't aid Shannon's possession. The chain is broken.   We have the argument that the charge was based solely on the fact that Mello was  So now we have a case in which Mello was drugging his home side, once the judge acquitted him of Mello's drugging his home side. You think the judge had to acquit him of that before we could even ---- Of drugging. It was based solely on the fact that the judge acquitted him, or is it based upon the charging instrument? The first step is looking at the charging instrument. And I'm arguing the charging instrument did not put him on notice, that he could be convicted of Shannon's possession. Now we can look at the evidence and say, does the evidence rationally support a conviction of Shannon's possession? And I'm saying no. In light of the judge's ruling acquitting Sebastian of aiding and abetting Mello's transfer of possession, then he can't aid Shannon's possession. It doesn't make sense to say he's not guilty of aiding and abetting Mello's transfer of possession, but he's guilty of aiding and abetting Shannon's possession. It doesn't make sense. Okay. Counsel, we've heard your time is up, but does either justice have any additional questions? No. And nor do I. At the conclusion of the Roboto argument, I mean, at the Appley's argument, you'll have time for Roboto. Thank you. Mr. Tate. Your Honors. The people asked this Court to affirm defense conviction for a lawful possession of a controlled substance on a theory of accountability. How did the indictment put the defendant on notice that the State would be arguing that he was accountable for Shannon's possession? The indictment for drug abuse homicide specifically refers to the charge of delivery of a controlled substance. And in the charges from the cell for this case, it specifies that the law would deliver heroin, a controlled substance, to Shannon Finn, who thereafter ingested a portion of the heroin, thus inducing her death. The reason that the defendant was on notice in this case was in order for Shannon to have ingested the heroin that killed her, she would have had possessed the heroin. That's what the trial court stated during his finding and finding the defendant guilty in this case. Moreover, since delivery, for delivery of a controlled substance, one has to have possession of that controlled substance in order to deliver it. And once delivery has been completed, the possession goes from the dealer to the buyer, in this case, Shannon Finn. So in the charges made, the defendant is apprised that for the entire completion of this crime of a drug abuse homicide, possession had to go from the dealer, Milo, to the buyer, Shannon Finn. She ingests the drugs and unfortunately passes away. Maybe in an abstract situation we could say that he would know that this charge, the way he's indicted in these counts, that he could also be charged with the accountability for possession. But tell me, where is it that he's accountable for possession? How is he put on notice for her possession? In other words, how does he know when he looks at the charging instrument that he is also going to be accused of aiding and abetting her possession? It is somewhat inherent in the offense itself. As I said before, with delivery of a controlled substance, the dealer has controlled substance. He possesses it. And then when that delivery is completed, that possession leaves the dealer to the buyer. For this defendant in this case, for aiding and abetting Milo for this charge, he's on notice that when Shannon Finn completes her purchase of the drugs, that she is now in possession of them. Well, isn't there a break factually in the chain when he gets his drugs, everybody else in the car gets his drugs, they're all dropped off at their various homes? Isn't there a break in the chain? I mean, does possession continue no matter what happens to that drug? I believe under the theory of accountability that if someone has a common design, when there's a common design, that's how you have accountability. For this case, for the defendant, Shannon messaged him on Facebook. They messaged back and forth. She is an addict. She's out of drugs. She asked her friend for more. And the defendant contacts another of his friends to help Shannon get these drugs. And this is how they end up in Oakbrook Mall. This is how Milo's runner goes to her. There's a change of money. She gets her six baggies of drugs. Yes, they do use three there, but she still has three left over. All of that evidence had to do with the delivery and the argument that the defendant was responsible. Since he was responsible for setting up the delivery, he then became responsible for her death. Yeah, the people were arguing that it was for delivery, but also it is for the reason why he's responsible for her possession. Because without – as Judge Bridges mentioned, the trial court found that he was not guilty of the delivery, which resulted in her death. Then how could he possibly be responsible for the possession? Because without the defendant, there is no possession whatsoever. Shannon contacted the defendant in order to get drugs, specifically him. The reason why the court found that he's not responsible for Milo's delivery was because the defendant had to contact another person who then contacted Milo before the whole buy was ever – That was Antonia. She was never charged, correct? It's not within the record whether she was ever charged or not. I do not believe so, but I'm not sure precisely. Mr. Taylor, let me ask you a pointed question. How do you respond to opposing counsel's argument that there are no Illinois cases which have recognized and upheld the right of the State to switch principles at the end of the case? How do you respond to that argument? About switching principles. It's not about switching principles. It's about the charging instrument approach, which is focused on whether or not there's a broad outline within the – a broad outline within the actual language of the charge to provide the defendant notice that they could be – could be found guilty of a lesser offense. This information about the principle or – the thing is – So if they have one principle outlined in the broad outline of the indictment and they – at the end they ask that another principle be substituted in, that's not a problem at all? It's not supposed to be substituted in, as in this case, the defendant can't be – for this case, for possession, to sentence Finn is deceased herself. She would be the principal possession and she would be – that he's accountable for her possession. In another situation, if this wasn't a charge of drug abuse homicide, just flat charge or delivery, Shannon Finn is still alive. He would still be responsible for her possession and she would be the principal he accountable. The thing is – What's the basis for him being responsible for her possession when he never touched the drugs or anything to do with physical possession or control? I believe it was mentioned how the fact that they were joint users and that is one way to find accountability when there was a common design for individuals to work together in order to possess this contraband. And one of the reasons that – one of the reasons the defendant assisted Ms. Finn in helping her acquire drugs is that he was hoping that he'd benefit from her purchase, which he didn't. Thank you. Moving on. First of all, is there sufficient evidence to convict? As said before, Shannon Finn, as an addict, she had no drugs she could use. She contacted her friend, the defendant. The defendant was unable to assist her directly, therefore he contacted his other friend, Antonia Serio. Antonia was the one who completed the contact to the drug dealer Melo. Antonia was the one who was able to drive them all to the Oakbrook Mall, in which the runner was able to provide the drug to Ms. Finn. They all had some heroin there and before being dropped back at home. The bags she bought Ms. Finn were covered – had the plastic baggies with a black eagle design on them. There was one bag with a black eagle design that was found in a cigarette carton underneath her couch where Ms. Finn was discovered the morning after deceased. Looking at all this evidence, the life variables of the prosecutor, this indicates that without the defendant's assistance, Ms. Finn would not have been able to acquire the bags of drugs that she took. Well, she had other sources, correct? Potentially, but she didn't get help from them. She got help from the defendant. Well, do we know that for sure? I mean, she was left alone for several hours before she was found dead. From the evidence, I believe her brother testified that when she came home, I don't think she left again. Your argument is in the light most favorable to the state, yet the state proved that possession of those drugs purchased continued on. Those are the drugs Shannon had when she passed. Yes, sir. How could you say that the evidence here was sufficient when without the Facebook messaging, what other evidence was there that she died from the drugs that were purchased when the defendant was with her from NYLA? If I'm answering your question correctly, you're asking whether or not any other evidence of some other type of drugs she could have acquired besides from the defendant. Your Honor, I do believe that from a sweep of her, the home she was staying in with her brother, that the only drugs were the bag with the black design on it that were covered. There were no other contraband found. I do believe they did find a drug to help with overdosing. Narcan? Yes. This police searched the apartment. There was no other drugs in the apartment other than what was found? Yes, Your Honor. From what I remember of the record, there was nothing else in the apartment other than what was found from that apartment. So that's why the light most favorable to the people that the drugs that was bought that day, the previous day, were what had killed her. Any more questions, Your Honor? Your Honor, do you want to address the defendant's argument that trial counsel was ineffective for failing to file a motion to suppress? I can address that, Your Honor. We argue that the charge was not ineffective with regards to this interview. With regards to the charge of a drug use homicide, trial counsel's interview was actually a very good video for the defense. One of the reasons that the court was able to find that the defendant was not guilty of drug use homicide was based upon the interview that the defendant gave to the officers. Because from the evidence the officer recovered and from the defendant's interview, there was not enough evidence to show the direct link necessary that would make the defendant accountable for the dealer of mule's actions. Counsel, the officers here, they assured the defendant multiple times that his statement would not come back on him. And they explicitly, at least it was Officer Palmer, that said that he promised the defendant that it wouldn't essentially hurt him. Doesn't these assurances by the police interfere with the defendant, you know, not really understanding the consequences of the statements that he made that led to the Facebook post? Well, Your Honors, those statements from my view of the video seem to indicate more so that the defendant was more concerned about Milo realizing that he's the one who gave up his name to the police. Because right after the officer says, this will come back on you, that's when he says Milo's my dealer, he's the dealer that we use to get these drugs from. So it seems to me more indicating that he's more concerned about the dealer getting to him for ratting him out than necessary for his probation for his past drug use. As for whether overburning his will, the defendant and Finn are friends. And he is concerned, and he was really concerned for her. And while he was greatly upset by her passing, he obviously cares enough to want to make sure that it indicates that, the interview seems to indicate that he cares more so about his friend and wanted to ensure that there is some full accountability for her passing. So you don't believe that his statement at all could be considered, he doesn't want his statements to come back as a confession. You thought it's more akin to, I don't want people to know I'm an informer or I may be informing. That's what it seemed like from my review of the record, that's what it seemed like. That's what he says to one of his friends, that he's worried about the people on the street and there are people out there. That he says that later on. I believe so, I'm not sure. On the Facebook post. That would tend to support your argument that he didn't want it to come back on him. Yeah, I think that message was to the friend Carlos, who was a four-person vehicle that Antonia drove. Mr. Taylor, wouldn't it be fair to say that the defendant's defense might have been different had he known he was going to be defending accountability for Shannon's possession as opposed to Mule's delivery? Isn't it fair to say he would have aided his defense knowing up front that he would have been charged with her possession? People argue that the defense that he received probably would have been essentially the same, regardless of whether or not the lesser offense of Mule is the same. Defending against accountability for delivery versus possession, why would that be the same? Does he have constitutional entitlement to be prepared to defend against the charges? Yes, he is constitutionally allowed to be prepared against the charges against him. The reason it would be the same is because, as I said earlier, that since possession is such an inherent element of this offense, he would be ready and apprised that the possession of both himself from accountability for Mule or of the deceited Ms. Finn is a possibility of what can be charged. Even though it was not specifically charged in this case, it could have been. Are there any more questions? I don't think Justice has any additional questions. No. Can I ask the people to submit questions? Nor do I. Thank you, counsel. Thank you, Robert. Thank you. You may proceed. As to the motion to suppress, counsel just claimed that the statement actually helped Sebastian because it led to his acquittal. Counsel must have forgotten that it's because of that statement he was arrested. Because of that statement, he was charged with homicide. Because of that statement, he spent two years in custody. And because of that statement, he stands a convicted felon. So, no, the statement didn't help him. The statement led to his conviction. And counsel also mischaracterized the statement, claiming that Sebastian was only concerned about ratting out Mello. That completely ignores the first 50 minutes of the interview. The beginning of the interview, the cops repeatedly said, you're not going to get in trouble for anything you did last night. We can't jam you up for anything you did last night. We just want you to be honest. Who sold the drugs, they asked. Sebastian refused to answer. Did all of you pitch in? Sebastian hesitated. Wouldn't answer until the cops said, you're not going to get in trouble. Sebastian admitted to shaming about the drugs. The cop responded, I assure you, we're not jamming you up. And I appreciate you being honest. We can't jam you up, the cop said. Sebastian appeared relaxed. Who arranged for the pickup, the cop asked. Sebastian refused to answer. The cop said, again, you're not going to get in trouble, just so you know. Then Sebastian said, channeled about the drugs, and gave them drugs for helping her get a ride. Ms. Biden, in the Facebook post, the defendant does express concern to Chris Bell about this coming back on him, basically on the street, correct? He says to Mr. Bell, there's a lot more that goes into that than just what's right and wrong, because they already have the Dunes number, so they may have already ruined my credibility by trying to jump on something they really don't know that much about. These guys have been around for a long time, and also the streets talk grow IDK, which I presume means I don't know. I'm not sure. I will let you know, because Chris Bell is trying to encourage him to cooperate. Right, because the police wanted Sebastian to be an informant, and he refused. These texts would have been inevitably discovered, correct? I don't know. The police officers testified that they learned about Sebastian through the family. Through the family. Yeah. I'm not sure. I don't know if they would have inevitably been discovered. I don't know if they were. I don't know what led them to those. But if you look at the video, he clearly refused to answer questions about how Shannon got the drugs, and he only answered them because the police said, we can't jam you up, we're not going to jam you up, I promise you you're not going to get in trouble. I mean, he even asked the cop to swear on his kids' lives, and he did, and then that same cop arrested him for murder a week later. Well, this is obviously a tragic case. Your client, his father died from a heroin overdose. Shannon, and he knew about this. Shannon had overdosed just a month before, April 30th. She was hospitalized, four doses of Narcan. It's a tragic case, but the defendant was intimately involved in her drug usage and his shared drug usage. They were close friends, Shannon and Sebastian. But the record shows that his statement was not voluntary. There are certain interrogative – police obviously have leeway in their interrogation. Certain interrogative techniques are so offensive to our criminal justice system. But how is it, as a matter of strategy, harmful to the defendant when the judge relied upon what – He never would have been charged. He never would have been charged without the statement. Well, how do we know that? There's no evidence but the statement. The statement is the main piece of evidence against him. These Facebook posts aren't evidence? And the statement is what proved him accountable of Shannon's possession. The judge relied on that. You can't make sense of the Facebook messages. Again, he gets off the most serious charge. He should never have been charged with drug and juice homicide to begin with. And he spent two years of his life in custody. You don't have any factual support for that because we don't know what considerations the state makes. The state has never charged someone under a theory of accountability with drug and juice homicide. This was the first case. The drug and juice homicide statute does – is not meant to target joint users. So, no, he shouldn't have been charged. And he was only charged because of his statement. And he lost two years of his life because of it. So, yes, this case is tragic. It's tragic for Shannon. It's tragic for Sebastian because he was arrested for a crime after the police induced a statement from him. And then they used that statement against him to obtain a conviction. And he was convicted of an offense that he never got to defend against. Aiding and abetting Shannon's possession is not the same as aiding and abetting Mello's homicide. They're two separate, distinct crimes requiring separate charges. This is an issue of first impression because no judge has ever gotten it wrong like this. It's an issue of first impression because it's wrong. The lesser-included offense – As Mr. Carroll mentioned, there was also a venue issue he could have raised if he had been on notice, correct? Right, which we addressed in the briefs that the only possession he could have theoretically – Have been in the car. Right, which we don't – we don't have those drugs. Because Sebastian was convicted of an uncharged offense that is not a lesser-included offense, his conviction should be reversed outright. Does either Justice have any additional questions? No. Thank you. Nor do I. Thank you. The Court at this time would like to thank both sides in this case for their arguments here to this Court that you were very well versed in your cases, and we appreciate that. And so we thank you for those arguments. At this time, Mr. Clerk, would you close and terminate these proceedings?